IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SOPHIA LAMBADARIOS MOFFETT,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 20-1654** |
| | : | |
| **WOODLAKE PROPERTIES, LLC** | : | |
| d/b/a **WOODLAKE PROPERTIES**, *et al*., | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM

**TUCKER, J.**                                                                                       September 9, 2021

Presently before the Court are Defendants'[1] Motion to Dismiss (ECF No. 9), and Plaintiff Sophia Lambadarios Moffett's Response in Opposition (ECF No. 10). Upon careful consideration of the Parties submissions and exhibits, and for the reasons outlined below, Defendants' Motion is **DENIED**.

### I.     FACTUAL AND PROCEDURAL BACKGROUND[2]

In May of 2019, Defendants hired Plaintiff Sophia Lambadarios Moffett ("Lambadarios") as a leasing agent. Although she performed other duties, Plaintiff worked in this capacity for approximately seven months until her termination on December 4, 2019. Am. Compl. at ¶ 15. Plaintiff worked mostly out of Croydon, Pennsylvania but assisted with Defendants' Bensalem and Philadelphia complexes. *Id*. at ¶16. Lambadarios reported to her manager, Philip Himy,

---

[1] Defendants are: (1) Woodlake Properties LLC, d/b/a Woodlake Properties; (2) Woodlake Management, Inc. d/b/a Woodlake Management; (3) Bucks Crossing C.H., LP; (4) Hampshire C.H. Apartments, LLC; (5) Fernhill Park Apartments 2004, LP; (6) Congress Hall 2004, LP; (7) Croydon 2015 Associate, LP; (8) Bradford Ryan 96 Associates, LP; BCCH Manager LLC; (10) Congress Hall Management Hall 2004 Corp.; and (11) Croydn Management Associates LLC, known hereinafter as "Defendants").
[2] This section draws primarily from Plaintiff's First Amended Complaint (ECF No. 5).

1

who in turn reported to David Kreiser, Defendants' Chief Operating Officer and the son of Defendants' owner and president, Jack Kreiser. *Id*. at ¶17.

Defendants used this management structure across all entities and operated as a single enterprise. Defendants: (1) transferred employees and management amongst different locations; (2) shared staff, employees and resources amongst different locations, under different business names; (3) utilized overlapping documents, policies, and information amongst each entity; (4) have the same owner and high-level management who share financial controls; and (5) followed the same directives, employment documents, procedures and benefits for the entire enterprise. Am. Compl. at ¶ 10.

Although Woodlake Properties LLC hired Plaintiff, her paystubs listed Bucks Crossing C.H., LLP as her employer. Am. Compl. at ¶ 10. Lambadarios also received five separate 1099 forms which bore the names: Bradford Ryan Associates 96, LLC; Hampshire C.H. Apartments, LLC; Congress Hall 2004, L.P.; and Fernhill Park Apartments, LLC. *Id*. Plaintiff was under the impression that she was a W-2 employee who earned $16.00 per hour, plus commission, and sought to memorialize this understanding when she emailed Philip Himy. *Id*. at ¶ 31. He informed her that all employees received checks without any deductions for the first thirty days but were eventually placed on Defendants' payroll with the requisite state and federal tax deductions. *Id*.

Defendants controlled: Plaintiff's work schedule; required her to work from 9 a.m. to 5 p.m.; and punch in and out of work each day. Am. Compl. at ¶ 33. Defendants' management also consistently supervised Plaintiff's work and dictated what projects she would work on and where to schedule open houses. They consistently referred to Lambadarios as their "employee" in correspondences and held her out as such. *Id*.

During her tenure with Defendants, Plaintiff experienced unwelcomed sexual comments, gestures, and touching by maintenance personnel, Julio Melendez. Am. Compl. at ¶ 19. She also complained to management regarding tenants who lodged similar sexual harassment complaints about Melendez and another maintenance worker, and the tenant's eventual eviction once management received these complaints. *Id.* at ¶ 24. Defendants terminated Plaintiff a week after she made another sexual harassment and retaliation complaint. *Id.* at ¶ 27.

On March 27, 2020, Lambadarios commenced this action, alleging Defendants violated: Title VII of the Civil Rights Act of 1964; the Fair Labor Standards Act ("FLSA"); The Pennsylvania Minimum Wage Act ("PMWA") and the Pennsylvania Wage Collection Law ("WPCL"). She also brought common law claims for fraud and wrongful discharge. Pl.'s Br. at 1. Plaintiff amended her complaint on July 15, 2020 and Defendants filed their Motion to Dismiss shortly after.

## I.    STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) Motion to Dismiss is to test the sufficiency of pleadings. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The touchstone of that pleading standard is plausibility. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (*citations and quotations omitted*). Facial plausibility requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. A plaintiff will not prevail if he provides only "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Instead, the plaintiff must detail "enough facts to raise a reasonable expectation that discovery

will reveal evidence of 'each necessary element of the claims alleged in the complaint.'" *Id*. at 234 (quoting *Twombly*, 550 U.S. at 556).

Applying the *Iqbal* and *Twombly* principles, the Third Circuit set forth a three-part test that district courts must apply when evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss. *Santiago v. Warminster Township*, 629 F.3d 121 (3d Cir. 2010). A court must: (1) identify the elements of the claim; (2) review the complaint to strike conclusory allegations; and (3) look at the well-pleaded components of the complaint and evaluate "whether all the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). If the complaint fails to do so, the motion to dismiss will be granted.

## II. DISCUSSION

Defendants argue that Lamadarios: (1) was an independent contractor, and therefore not an employee; (2) did not plead sufficient facts to establish she was Defendants' employee; (3) failed to argue sufficient facts that each Defendant is properly liable as her employer or joint employers; and (4) did not properly exhaust as to Bradford Ryan 96 Associates, LP, BCCH Manager, LLC, Congress Hall Management 2004 Corp., and Croydon Management Associates LLC, because she filed her Amended Complaint before the EEOC provided her notice of right to sue. Defs.' Br. at 8-9, 11, 13-14, 16 and 18.

### A. Employment Status under Title VII

#### 1. Employer-Employee Relationship

The issue before this Court is whether Plaintiff is considered an employee under Title VII, FLSA, PMWA, and WPCL, because only "employers" can be held liable for discrimination. 42 U.S.C. § 2000e-2(a) (Title VII); 29 U.S.C. § 201 *et seq*.; 43 P.S. §333.103(g) *et seq*.; 43 P.S.

4

§ 260.1 *et seq*.  In fact, most of Defendants' briefing concerns whether Plaintiff was an employee or independent contractor.  Defs.' Br. at 8.  Here, Plaintiff has successfully pled that she was Defendants' employee.

To make a proper Title VII claim, "[a plaintiff] must allege an employment relationship with defendants." *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 199 (3d Cir. 2013).  Additionally, Title VII protections do not extend to independent contractors. *Holtzman v. The World Book Co.*, 174 F. Supp.2nd 251, 253 (E.D. Pa. 2001) (citation omitted). "[T]he question of whether an individual is an employee turns on the 'the hiring party's right to control the manner and means by which the product is accomplished.'" *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 180 (3d Cir. 2009) (quoting *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)).  The Supreme Court has held that this evaluation considers the following, non-exhaustive list of factors:

> [T]he skills required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in  business; the provision of employee benefits; and the tax treatment of the hired party.

*Darden*, 503 U.S. at 323-24 (internal quotation marks and citations omitted).

The Third Circuit has focused its analysis on "which entity paid [the employees'] salaries, hired and fired them, and had control over their daily employment activities." *Fausch v. Tuesday Morning, Inc.*, 808 F.3d 208, 214 (3d Cir. 2015) (citing *Covington*, 710 F.3d at 119). Regardless, "all of the incidents of the relationship must be assessed and weighed with no factor being decisive." *Id*. (quoting *Darden*, 503 U.S. at 324)).

Here, Plaintiff has sufficiently pled that she is an employee. Defendants: (1) required Plaintiff to work from 9 a.m. until 5 p.m.; (2) punch in and out of work; (3) supervised her work; (4) dictated which projects she could work on; and (5) which office she would report to on that day. Amend. Compl. at ¶ 33. Lambadarios' Amended Complaint further plead that Defendants openly held her out as an "employee" in their correspondence and paid for all the supplies and items she used to perform her duties for open houses. *Id*. Plaintiff's Amended Complaint sufficiently pleads six of the *Darden* factors.

Moreover, the Amended Complaint satisfies the two factors that the Third Circuit generally focuses on. First, Defendants hired and fired Plaintiff. Am. Compl. at ¶¶ 15 and 27. Second, they had control over Plaintiff's daily employment activities. As listed above, Defendants supervised her in all aspects of her work. Although Defendants provided Plaintiff with multiple 1099 forms, which suggests they intended to employ her as an independent contractor, their actions outweigh their intent. Hence, viewing the evidence in the light most favorable to the Plaintiff, this Court denies Defendants' motion.

### 2. Joint-Employer Relationship

Defendants argue that if Plaintiff is an employee, under the applicable statutes, she is only an employee of the entities named on her 1099 forms. Defs.' Br. at 9. This argument, however, must also fail for two reasons: (1) Plaintiff has pled sufficient facts to establish that a joint-employer relationship existed; and (2) the parties have not exchanged discovery on the existence of joint-employer relationship.

Plaintiff's Amended Complaint pleads facts that sufficiently show a joint-employer relationship existed between all defendant entities. Plaintiff was hired by Woodlake Properties, LLC, but her paystub listed Bucks Crossing C.H., LP as her employer. Defendants also provided

five separate 1099 forms. Defendants do not argue Plaintiff did similar, or identical work, for each of the entities. The companies transferred employees to and from different locations, shared staff, and maintained the same managers throughout. Am. Compl. at ¶ 8, 10.

Lastly, Plaintiff pled facts alleging the Defendants are all controlled by the same owner, run the same high-level management system, share financial controls, follow the same directives, and use the same employment documents within the enterprise, regardless of the individual entity. They have the same procedures, benefits, and effectively operate as a single business.

Defendants' argument also fails because, even assuming Lambadarios had not sufficiently pled facts showing a single enterprise, Plaintiff is entitled to discovery to determine this issue. The Third Circuit has long established that fact discovery is needed to prove the existence of a joint-employer relationship. *Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997). "The precise contours of an employment relationship can only be established by a careful factual inquiry," *id.*, and granting a motion to dismiss, without discovery, would be premature. *Hartman v. Chestnut Hill College*, F.Supp.2d WL 1016655 (E.D. Pa. 2000). Only after discovery can defendants bring a motion for summary judgment on this issue. *Braden v. County of Washington*, F. Supp. 2d, WL 529919 (W.D. Pa. 2008). Therefore, Defendants' motion is denied.

### B. Employment Status under FLSA, PMWA, and WCPL

Defendants argue Count II, III, and IV should be dismissed because Plaintiff has not sufficiently alleged that she was an employee under the FLSA, PMWA, or WCPL, respectively. Defs.' Br. at 11, 13. These arguments must also fail.

Under FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Supreme Court has distinguished

the definition of an "employee" under Title VII and FLSA; it held that FLSA's definition gives a "striking breadth" and "cover[s] some parties who might not qualify as [employees] under a strict application of traditional agency law principles." *Darden*, 503, U.S. at 326.  Therefore, a court analyzes "the economic realities of the relationship [when] determining employee status under the FLSA."  *See Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991).

Although Title VII and FLSA's factors for determining an employer-relationship are similar, they slightly differ.  Under FLSA, courts will consider: (1) the worker's degree of control over work performed; (2) the worker's opportunity for profit or loss; (3) the worker's investment in equipment and material; (4) whether a special skill is required to perform the worker's function; (5) the permanency of the working relationship; and (6) whether the service rendered by the worker is integral to the putative employer's business.  *Selker Bros.*, 949 F.2d at 1293.

Under PMWA, an employer is defined as "any individual, partnership, association, corporation, business trust, or any person or group acting, directly or indirectly, in the interest of an employer in relation to any employee."  43 P.S. §333.103(g).

Meanwhile, the WCPL defines an employer as any "person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any of the above-mentioned classes employing any person in this Commonwealth."  43 P.S. § 260.2a.  Pennsylvania courts have interpreted the WCPL's definition of an employer "as requiring, at a minimum, some indication that the defendant employer exercised a policy-making function in the company and/or an active role in the corporation's decision-making process."  *Tyler v. O'Neill*, 994 F. Supp. 603, 616 (E.D. 1998).

The three statutes' definition of an employee are much broader and more encompassing than Title VII's. As a result, Defendants' motion to dismiss is denied. Plaintiff has successfully pled that Defendants required her to punch in and out for work, told her which projects to work on, and supervised her in all manners. They dictated her hours, treated her as an hourly employee, and specifically told her when and where to host open houses for Defendants' apartment complexes. Defendants paid for all Plaintiff's supplies and items when she performed her duties for the open houses.  Am. Compl. at ¶ 33. Therefore, Plaintiff is considered an employee under these statutes.

### C. Exhaustion of Administrative Remedies

Defendants argues Count I of Plaintiff's Amended Complaint should be dismissed because she failed to exhaust her administrative remedies. Def. Br. at 18. Defendants assert that Lambadarios did not exhaust her administrative remedies in relation to her Title VII clams against: Braford Ryan 956 Associates LP; BCCH Manager, LLC; Congress Hall Managements 2004 Corp.; and Croydon Management Associates, LLC. *Id*. at 20 and 23.

A plaintiff must comply with procedural requirements when brining claims under Title VII. *Barzanty v. Verizon Pa., Inc.*, 361 F. App'x 411, 413 (3d Cir. 2010). Likewise, they are required to exhaust their administrative remedies and file a timely discrimination charge with the EEOC. *Id*. (citing §§ 2000e-5(b), (e)(1), (f)(1)). Only after the EEOC investigates the claim and issues a "right-to-sue" letter can a plaintiff initiate a private action. *Id*. "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *Antol v. Perry*, 82 F.3d 1291, 1296 (3d. Cir. 1996).

Once a charge is filed, "the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can be reasonably be expected to grow out of the charge of discrimination…'" *Barzanty*, 361 F. App'x at 414 (citations omitted).  This standard prevents a plaintiff from "greatly expand[ing] an investigation simply by alleging new and different facts when [they are] contacted by the Commission following [their] charge. *Id*. (citing *Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 967 (3d Cir. 1978)).  Moreover, while a plaintiff's ability to receive a right-to-sue letter from the EEOC is a condition precedent to filing a Title VII claim, commencing a suit without one is not fatal and, in fact, is a curable defect. *Tolliver v. Trinity Par. Found.*, 2015 WL 4594517 at *2 (D. Del. July 30, 2015); *see also Molthan v. Temple Univ.*, 778 F.2d 955, 960 (3d Cir. 1985) (holding that a district court did not abuse its discretion when it considered retaliation claim where the EEOC issued a right-to-sue letter after a complaint was filed, but before trial began.); *see also Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 358 (3d Cir. 1984).

Here, Plaintiff sought to remedy any defect when she filed a supplemental Charge of Discrimination with the EEOC and PHRC on July 10, 2020.  Defs.' Br. at 21; Defs.' Ex. C.  The EEOC issued a right-to-sue letter on July 30, 2020, fifteen days after Plaintiff filed her first Amended Complaint.  Defs.' Br. at 22.  Under Third Circuit precedent, Plaintiff cured her defect as she received a right to sue letter and exhausted her administrative remedies.

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED**.